Todd Blanche
Attorney General of the United States
Courtney R. Pratten
Assistant United States Attorney
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVIS WARREN BOLAND,<br><br>Defendant. | 1:25-CR-02056-SAB<br><br>UNITED STATES' MOTION *IN LIMINE* REGARING SUBSEQUENT REPAYMENT MEASURES |

Plaintiff, United States of America, by and through Courtney R. Pratten, Assistant United States Attorney for the Eastern District of Washington, hereby submits this Motion *In Limine* Regarding Subsequent Repayment Measures in anticipation of trial in the above-captioned matter. In this motion, the United States respectfully requests the Court preclude Defendant from impermissibly admitting into evidence both testimony and exhibits concerning all repayment measures taken by Defendant Boland more than a month after the date of the charged theft and false statements based on the authorities cited below.

# I. BACKGROUND

Defendant Boland is the biological father of Minor 3. In 2022, when Minor 3's mother died, Minor 3 became eligible for survivor's benefits through the Social Security Administration (SSA) due to Minor 3's status as her deceased mother's eligible dependent. Defendant Boland was not married to Minor 3's mother at the time of her death; he was in fact married to another individual. Because Minor 3 was so young when her mother died, the SSA needed to appoint a representative payee to both receive and manage Minor 3's monthly survivor's benefits. Defendant Boland's roommate at the time, Preston Funderburgh, applied to fill this position for Minor 3. Prior to approving Preston Funderburgh's application, an employee for the SSA spoke with Defendant Boland. Defendant Boland assured the SSA employee that he was fine with Preston Funderburgh receiving and managing Minor 3's monthly survivor's benefits because Defendant Boland and Minor 3 both lived with Preston Funderburgh at the time. Defendant Boland also told the SSA employee that he would contact the SSA if he and Minor 3 ever moved out of Preston Funderburgh's home so that Defendant Boland could be Minor 3's representative payee.

Minor 3 moved out of Preston Funderburgh's home in June 2024. Minor 3 went to live with her maternal grandparents, who resumed complete financial and physical responsibility for Minor 3 from June 2024 through present day. Defendant

Boland remained in Preston Funderburgh's home for an additional three months. Defendant Boland did not call the SSA to report Minor 3 had moved out of Preston Funderburgh's home. Defendant Boland did not apply to be Minor 3's representative payee. Hence, Preston Funderburgh continued to receive and retain Minor 3's benefits from June 2024 through April 2025.

In September 2024, Defendant Boland moved out of Preston Funderburgh's home. Defendant Boland and Preston Funderburgh then began to split, and retain for their own purposes, Minor 3's monthly survivor's benefits on nine separate occasions from September 2024 through approximately April 2025. In April 2025, Preston Funderburgh was charged and arrested in the instant case. Preston Funderburgh has been incarcerated on his federal charges since April 2025.

On May 5, 2025, Defendant Boland went into the SSA field office in Yakima, Washington to apply in-person to be Minor 3's new representative payee. At that time, he falsely told the SSA that Minor 3 presently lived with him. An SSA employee asked Defendant Boland a series of questions that Defendant Boland was told would be used to process his representative payee application. Defendant Boland was told he would need to confirm the truthfulness of his statements and that he could be held legally responsible for his answers. Defendant Boland then falsely said his mailing address and residential address was a residence on Grove Avenue in Yakima, Washington. This is neither Defendant

Boland's residential address nor his mailing address. This is the address where Minor 3 has lived with her maternal grandparents since June 2024. At the May 5, 2025, in-person appointment with SSA, Defendant Boland told the SSA employee that Minor 3 lived with him full time and he falsely told the SSA that he and Minor 3 moved out of Preston Funderburgh's home in September 2024. He did not tell the SSA that Minor 3 had moved in with her maternal grandparents in June 2024. Defendant Boland then falsely told the SSA that Preston Funderburgh had retained all Minor 3's benefits since she moved out of his home. Defendant Boland did not tell the SSA that he and Preston Funderburgh had been splitting and retaining Minor 3's survivor's benefits for their own personal use since September 2024. Based on these false statements, as well as other representations made in his application, the SSA approved Defendant Boland to be Minor 3's new representative payee beginning in May 2025.

On May 14, 2025, Defendant Boland was notified, in writing, that he was chosen to be Minor 3's representative payee. He was advised, in writing, that he would need to account for how he spent Minor 3's survivor's benefits. This communication was mailed to the address on Grove Avenue, Yakima Washington, which Defendant Boland falsely provided to the SSA when he applied to be Minor 3's representative payee.

In June 2025, Defendant Boland received his first direct payment of $1119.00 of Minor 3's survivor's benefits as her appointed representative payee. Defendant Boland did not give any of this money to Minor 3's maternal grandparents. As noted above, Minor 3 has lived with her maternal grandparents since June 2024, and they have been providing for her financially since that time.

On July 15, 2025, approximately two months after Defendant Boland lied to become Minor 3's representative payee; approximately eleven months since Defendant Boland had been stealing either all or half of Minor 3's monthly survivor's benefits; and approximately three months after Defendant Boland learned Preston Funderburgh was being prosecuted for stealing Minor 3's survivor's benefits, Defendant Boland paid SSA approximately $1,000.00 of the benefits he stole after becoming Minor 3's representative payee. He did this with money order 40220996670701. On the same date, Defendant Boland repaid approximately $119.00 of Minor 3's survivor's benefits he stole after becoming her representative payee with money order 40220996670710. To date, Defendant Boland has not repaid any additional money to the SSA or to the maternal grandparents of Minor 3.

Based on the above, Defendant Boland is charged with nine counts of Wire Fraud, in violation of 18 U.S.C. §1341; one count of Theft of Government Money, in violation of 18 U.S.C. § 641; and, three counts of False Statement, in violation

of 18 U.S.C. § 1001 (ECF No. 109). The charges were brought by way of a Second Superseding Indictment filed September 9, 2026, in the Eastern District of Washington.

## II. LEGAL AUTHORITIES

The United States is opposing any effort of Defendant Boland to present evidence, through testimony or exhibits, of repayments he made to the SSA in July 2025, and files this motion *in limine* accordingly. "A motion in limine is a proper vehicle by which the government may challenge the sufficiency of an affirmative defense before trial." *United States v. Ross*, 206 F.3d 896, 898 (9th Cir. 2000).

In *Ross*, the defendant was a postal employee charged with stealing more that $1,000 worth of postal money orders. *Id*. The appellate court upheld the decision of the trial court to "exclude any evidence of defendant's intent to pay back proceeds from the United States" because "[s]uch crimes are complete when the misapplication or embezzlement occurs." *Id*. at 898-899. (citing *United States v. Coin*, 753 F.2d 1510, 1511 (9th Cir. 1985). This is consistent with the ruling in the *Coin* case, where the defendant, who was the vice-chairman of the Hopi tribe, embezzled tribal funds through bank requisitions. *Id*. After Coin was indicted, he repaid the stolen money. *Id*. At trial, part of Coin's defense was that he lacked the intent to steal from the tribe since he repaid what he took. *Id*. As acknowledged by the *Coin* court, defendants are entitled to a jury instruction on a defense, but only

when the defense is rooted in both law and the record. *Id*. (citing *United States v. Candelaria*, 704 F.2d 1129, 1132 (9th Cir. 1983)). The court concluded Coin's defense was neither rooted in the law or the records because "the intent to return property is not a defense to embezzlement." *Id*. (citing *United States v. Faulkner*, 638 F.2d 120, 130 (9th Cir. 1981)). Moreover, the intent to return property is not a defense to misapplication of funds." *Id*. (citing *United States v. Dreizler*, 577 F.2d 539, 546 (9th Cir 1978)). In cases such as misapplication or embezzlement, the victim of the crime "is deprived of its right to have custody of its funds, that is, its right to make decisions about how its funds are used." *United States v. Dreitzler*, 577 F.2d 539, 546 (9th Cir. 1978).

A possible exception to the legal authorities above could be made, and restitution measures admitted at trial as relevant to intent, in situations where repayment is contemporaneous with theft. *Coin*, 753 F.2d at 1510, 1511. A permissible example being when a personal guarantee of loans is made at the time of a misapplication of funds. *United States v. Cauble*, 706 F.2d 1322, 1354 (5th Cir. 1983). However, as the defendant in Coin made the offer to repay the relevant loss months after the commission of the crime and after indictment, "[t]he crime occurred and the misapplication was complete when the funds were misapplied; whatever occurred later as to repayment was neither material nor a defense." *Coin*,

753 F.2d at 1510, 1511. (citing *United States v. Acree*, 466 F.2d 1114, 1118 (10th Cir. 1972).)

## III. ARGUMENT

Defendant Boland's post-conduct repayment of a *portion* of what he is accused of stealing, made approximately *eleven* months after he and Preston Funderburgh began splitting Minor 3's monthly survivor's payments for their own use and personal gain; over *two* months after Defendant Boland told multiple lies to gain primary control of Minor 3's monthly survivor's benefits; and, over *one* month after Defendant Boland received the June 2025 payment of Minor 3's monthly survivor's benefits, is not relevant to his intent to commit the federal charges he is facing and it should not be admitted into evidence at trial as it is neither relevant nor material. Partial repayment attempts were not even close to contemporaneous with the completion of the crimes with which he is charged. Moreover, from at least September 2024 through June 2025, the victims in the case, to include both the SSA and Minor 3, were deprived of the right to have custody of its funds and to determine how those funds should be spent. Partial repayment after the fact does not obviate that deprivation of rights. As such, the United States respectfully requests all evidence of repayment made after the dates of the charged crimes be excluded from evidence presented at trial based on the above-cited Ninth Circuit precedent and law.

## IV. CONCLUSION

Given the arguments and authorities herein, the United States respectfully requests this Court preclude Defendant Boland from impermissibly admitting into evidence both testimony and exhibits concerning partial repayment measures taken by Defendant Boland more than a month after the charged Wire Fraud, Theft of Government Money, and False Statements he stands accused of concluded.

DATED this 29th day of September 2026.

TODD BLANCHE
Attorney General of the United States

*/s/ Courtney R. Pratten*
COURTNEY R. PRATTEN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the counsel of record in this case.

*/s/Courtney R. Pratten*
COURTNEY R. PRATTEN
Assistant United States Attorney
United States Attorney's Office
402 E. Yakima Avenue, Suite 210
Yakima, WA 98901
Phone: (509) 454-4425